Carey *vs.* Hillhouse and others.

~~~~~~~~~~~~~~~~~~~~~~~~~

No. 27.—EDWARD CAREY, Assignee, plaintiff in error, *vs.* DAVID P. HILLHOUSE, and others, defendants.

[1.] No persons are parties defendants to a bill in Chancery, except such as are described and named as such, and against whom a subpœna is prayed.

[2.] The amendments to a bill generally refer to the time of suing out the original bill; they become part of the original bill, and with it constitute but one record.

[3.] A copy of the bill and the subpœna, may be served by a private individual, as well as by the sheriff, officially.

[4.] When a defendant, described as such in the bill, and against whom a subpœna is prayed, is served with a copy, and with it, with a subpœna referring to the bill in its descriptive parts, and containing the names of other defendants

yet which does not contain the name of *that defendant*—*Held*, that such service is sufficient to require such defendant to appear and answer.

In Equity, Muscogee Superior Court, May Term, 1848. Before Judge ALEXANDER.

The facts are embodied in the opinion of the Court.

JONES, BENNING & JONES, and DOUGHERTY, for the plaintiff in error.

COLQUITT & WELLBORN, for the defendant in error, David P. Hillhouse, submitted that the question in the cause arose from the face of the record itself, viz: Whether the Court below had erred in vacating, by its order, an entry of service of the bill in hand, indorsed upon it by the sheriff of Richmond; it appearing to the Court, as it does, that no subpœna or other process was prayed for by complainant against said Hillhouse, and that he was not named in the subpœna or process which was sued.

1st. Does any doubt exist as to the jurisdictional regularity of the proceeding by *motion*, that was had in Muscogee Superior Court, in the case brought up for review? That the Court had authority to *hear* the motion, and that such indeed is the most usual mode of procedure in such cases, is easily shewn. 5 *Randolph*, 639. 4 *Johns.* 191. 17 *Johns.* 484. 1 *Doug.* 194, (*first American Edi.*) 1 *Salk.* 93. R. M. *Charlton's Rep.* 353. 18 *Eng. Com. Law Rep.* 273. 20 *Eng. Com. Law Rep.* 344. An examination of the cases cited will shew, that Courts by way of relief, grant on proper grounds, motions to quash *fi. fas.* or other processes, and to subserve truth, at will order entries to be made or annulled touching them, by those charged with their execution, even though the facts on which the motions are made, exist *dehors* the record. In the case under review, the bill served upon Hillhouse discloses the fact, that his name did not appear at the time the copy was handed to him, either in the prayer for the subpœna, or in the subpœna itself. It is also apparent, that no other process than the subpœna, was asked for or issued.

2d. Did the Court err in *granting* the motion that was made, to vacate the certificate of service of the bill thus predicamented,

Carey vs. Hillhouse and others.

returned and of file as it was, in office? That no one is a party to a bill in Chancery, or obligéd to appear to it, except those against whom subpœna or other process is prayed, and upon whom subpœna or other process is served, is a familiar elementary rule of Chancery pleading. 1 *Newl. Ch. Prac.* 60. (*first Amer. Edi.*) 2 *Mad. Ch. Prac.* 200. *Story's Eq. Pl.* 44, *and note* 3. *Executors of Brasker and others vs. Waters and others,* 3 *Johns. Ch. Rep.* 410. *Fawkes vs. Pratt,* 1 *Pierre William's Rep.* 593. Indeed, it is manifest, that it is alone by the service of its *subpœna* or *process,* directed to the defendant in error, that the Court can get jurisdiction of him. The Court, then, in Muscogee, was right in the supposition that Hillhouse was not a party to the bill thus informally served upon him, either as originally framed, or as amendéd. The service of the bill then, upon Hillhouse, or rather the handing of a copy of it to him by the sheriff of Richmond, was evidently not an official act; that is to say, it was not an act done by the sheriff, in obedience to any duty which the general law of his office, or the mandate of the Court in this particular instance, required of him. As such, it was merely gratuitous, and therefore null. In such circumstances, it was clearly not entitled to go upon the files of office, or to become a part of the record of the case. Of what rightful value was it, then, to the complainant in error? The complainant moved a second amendment of the bill, on objection taken to the disputed service, with a view to meet the rule of pleading. But this, of course, could only be made available with reference to future, not to past service. To hold, that the mere *ex parte* insertion of the name of the defendant in error, as a party in the prayer and process, at a period subsequent to the alleged service, could by retroactive operation, render valid that attempt at service which was void at the time it was made, would be, in effect, an abrogation of the rule of pleading previously referred to. If, in fine, the *service* were binding when made, no amendment in the respect proposed by complainant in the second instance, was necessary; if not, no amendment or other act, following it in order of time, can make it so. The most then that could in any event be said of the proceeding complained of, is, not that the Court *erred* in passing the order vacating the objectionable return of the sheriff of Richmond, but that it only declared by its judgment, *that* to be void, which was void. But the tenacity with which this fallacious and

delusive certificate is adhered to by complainant, vindicates the Court from the imputation of having rendered an unnecessary judgment in the premises. It was *proper* that the Court should, in this respect, protect its own proceedings, and the rights and just apprehensions of a citizen, against the possible consequences of the informal procedure of complainant in the Court below.

*By the Court.*—NISBET, J. delivering the opinion.

This bill was filed by Edward Carey, assignee, against Daniel McDougald and others, to charge them, as stockholders in the Planters & Mechanics' Bank of Columbus. At the first term of the bill, leave was granted the complainant to amend, by adding new parties defendants, and time given for service; so also, at the next term following. In pursuance of the leave to amend last granted, the complainant amended by inserting the name of Daniel P. Hillhouse as defendant, in the bill, immediately after the names of the persons already in it. A second original and copy of the bill thus amended, was sent to the county of Richmond, the residence of Hillhouse, for service, and with it a subpœna, *which subpœna in its caption named the original defendants, and did not name Hillhouse, and was addressed to the defendants.* A copy of the amended bill with this subpœna was served upon Hillhouse by the sheriff of Richmond county, as appeared by his certificate entered on the second original, duly by him returned to the Court in Muscogee county, where the original bill was filed. At the term of the Superior Court of Muscogee county next following the return of said second original, counsel for Hillhouse moved the Court that the sheriff's certificate of the service of the same be annulled, and set aside, and Hillhouse be discharged, upon the ground that the service was made *without a process, and without a prayer for a process in the original bill.* Which motion was granted, and the certificate of service annulled, and Hillhouse discharged. To the decision, on this motion, the counsel for the complainant excepted.

The grounds occupied by the counsel for the defendant are, that he should be discharged—

1st. Because he was no party to the bill, there being no prayer for process against him, and farther, he being no where named in the bill as a party defendant.

2d. Because if a party—and if there is in the bill a prayer for process against him, yet no subpœna was in fact served upon him. In support of the last ground, they say that his name is not found in the subpœna at all; it is not directed to him; that the sheriff of Richmond, therefore, had no authority to serve him, and having served him, the act of service was unofficial, and the service a nullity. The conclusion they draw is, that Hillhouse is not legally before the Court, and must therefore be discharged.

[1.] To use the language of an English Chancellor, it is not every one that a party plaintiff chooses to talk about or to complain against, that is a party defendant to a bill. No persons are parties defendants to a bill in Chancery, except those against whom process is prayed, and who are specially named and described in it as defendants. It has been held that persons may be made parties by a clear statement in the bill to that effect, without a prayer for subpœna against them. But I have no doubt but that, by a great preponderance of authority, to make one a party, there must be a prayer for process against him. That is the established test. *Brasher vs. VanCortlandt*, 2 *J. Ch. R.* 245. *Verplanck vs. Mercantile Ins. Co. of New York*, 2 *Paige R.* 449, 450. 1 *Marsh, K. R.* 594. 2 *Dickens R.* 707. *Fawkes vs. Pratt*, 1 *P. Will. R.* 592. 15 *Vesey*, 164. *Story's Eq. Plead. sect.* 44. 1 *Daniel's Ch. Prac.* 444, 445.

[2.] We are then to enquire whether there is in this bill, a prayer for process against the defendant, Hillhouse, as it stood when amended by the insertion of his name. The amendment becomes part and parcel of the original bill; the original bill and amendment constitute but one record, certainly in this case, where the amendment was as to a party—where the bill was yet incomplete—where no issue had been formed, and it was yet at its appearance term. Amendments refer, generally, to the time of filing the original bill. 1 *Daniel's Ch. Prac.* 455. *Vose vs. Glynn*, 2 *Dick.* 441. *Hurd vs. Everett*, 1 *Paige*, 124. *Walsh vs. Smith*, 3 *Bland.* 9, 20. *O'Grady vs. Barry*, 1 *Irish Eq.* 56. *Story Eq. Plead. sects.* 332, 885.

In reference, then, to the question before me, Hillhouse occupies the same position with the original defendants. If there is a prayer for process against *them*, there is, also, a prayer for process against *him*. The bill seeks a recovery in favor of the plaintiff, a judgment creditor of the Planters & Mechanics' Bank of

Columbus, out of the stockholders of that institution, under its charter. It *names* certain individuals, and *describes them as stockholders*, designating the number of shares held by each; it charges them as rateably liable, under the charter, and prays a decree against them. Among the individuals thus named and described, in the amended bill, is the defendant, Hillhouse. He is, therefore, without any doubt, clearly named and described *as a defendant.* The bill being one and indivisible, all the prayers in it apply to him, as much as they apply to the other defendants. What, then, is the prayer in the bill for process? It is that a subpœna be granted, "directed *to the aforesaid stockholders, herein before mentioned and stated*, or to their legal representatives, commanding them and each of them, to be and appear, &c." Here, then, is an unequivocal naming and description of the defendants, and a prayer for subpœna, against each of them. So that, we consider it clear, very clear, that in this bill there is a prayer for process against Hillhouse, and that the decision of the Court cannot be sustained on the first ground occupied by counsel for the defendant.

Can it be sustained upon the second ground occupied by him? Let us see, again, what are the facts! They are brief. A copy of the bill, as amended by the insertion of the name of the defendant, Hillhouse, is served upon him by the sheriff—and with it a *subpœna*, duly signed and sealed and attested, and which stated the case as it sounded before the amendment. Mr. Hillhouse's name does not appear on it as a defendant—and *the defendants* are required to appear and answer, &c. The question is, was this a sufficient service of a *subpœna*, upon Hillhouse?

The counsel for the plaintiff in error, tell us, that under the Act of 1799, it is not necessary, at all, for the defendant to be served with a subpœna. They contend that it is enough, if he is served with a copy of the bill. The 5th section of that Act defines, to a certain extent, the Chancery jurisdiction of the Superior Courts; it declares that the proceedings shall be by bill, *and such other proceedings as are usual in such cases*, until the setting down of the cause for trial. It further enacts, that a copy of such bill shall be served upon the opposite party, at least thirty days before the filing of the same in Court; and that the party against whom such bill shall be filed, shall appear and answer to the same, at the next Court; and if he, she or they shall fail to do so, the facts in said bill shall be taken *pro confesso*, and the Court may proceed

Carey *vs.* Hillhouse and others.

to decree, as to justice shall appertain. *Prince*, 447. It is argued, with much plausibility and force, that upon service of a copy of the bill, the defendant is required to answer, and if he fail to do so, although he might not be liable to a process for a contempt of the Court, for not appearing, yet he would be liable to have the bill taken, as confessed, and to a decree. In England, it is not necessary that the defendant be served with a copy of the, bill; he is there required to appear and answer by service of a subpœna. The service of a copy here, it is claimed, is intended to be in substitution of service by subpœna there, so far as to authorize the bill to be taken *pro confesso.* The Act, say the counsel, declares that a copy shall be served, and immediately thereafter, declares that the defendant shall appear and answer, and if he fail to do so, the bill shall be taken *pro confesso*, and the Court shall proceed to decree. This idea derives strength from the character and office of a subpœna. We call it a process, but in strictness it is not. A process is directed to the officer of the Court, commanding him to do certain things. A subpœna is directed to the party. Hence, it is not indispensable that it be served by the sheriff; it may be served by any one. In that event, the proof of service would be different. The office of the subpœna is to notify the party that the bill is filed, and that he is required to appear and answer, and abide the judgment of the Court, under a penalty. Some of the functions of the subpœna are fulfilled by a service of the copy. For example, the defendant is notified of the pendency of the bill, and of the ground and character of the plaintiff's complaint. Being so notified, it may with reason be said, that is all that is necessary, to justify taking the bill *pro confesso.* It is the privilege of the defendant, upon such notice, to come in and defend; if he fail to do so, it is his own default. What better security against the bill's being taken *pro confesso*, would he have if he were subpœnaed? To that end, the service of a copy of the bill is far more effectual than a subpœna; for by that service he is put in possession of the whole of the plaintiff's case, thirty days before the sitting of the Court. We should think with the counsel for the plaintiff in error, but for the previous declaration in the Act that the proceedings shall be by bill, *and such other proceedings as are usual in such cases, until the setting down of the cause for trial.* The *other proceeding* referred to are the proceedings which, in the English practice in

like cases, were usually had. A subpœna, in the English practice, was, at the time of the passage of the Act, a part of the proceeding in such a case as this, before the setting down of the cause for trial. We conclude, therefore, that it was not the intention of the Legislature to dispense with the subpœna, but in addition thereto, to require the service of a copy of the bill. The service of the copy, however, has a very material bearing upon the farther consideration of this case. Without the service of a copy, we should hold the service of the subpœna in this case bad; with it sufficient. The copy served upon the defendant, describing him as a party defendant, and praying a subpœna against him, identified him as one of the defendants intended to be notified by the subpœna. The statements in the bill, and the statements in the subpœna, taken together, identify each as appertaining to the other, and the service of both is sufficient to require the defendant to appear and answer, at the peril of having the bill taken as confessed. Whether such service would be sufficient, in any given case, to subject him to a process for contempt, it is not necessary now to determine. If it is sufficient for the purpose indicated, the Court erred in vacating the certificate of the sheriff, and in discharging the defendant. The argument that, inasmuch as Hillhouse's name does not appear in the subpœna, the sheriff had no authority to serve him, and therefore the service is illegal and void, is answered in this, that it is not necessary that the service be official.

[3.] The sheriff can serve a copy bill and subpœna, as a private individual. No question was made in this case about the sufficiency of the proof of the service. If there had been, and the official return had been held no proof of service by the sheriff, as an individual, still I apprehend that it would not have been proper to discharge the defendant; but the plaintiff would have been entitled to make proof of the service. *Trabee vs. Holt*, 2 *Bibb*, 393. *Hoye vs. Penn*, 1 *Bland*. 29. *Taylor vs. Gordon*, 1 *Bland*. 132. *West vs. Smith*, 1 *Green Ch.* 309. 1 *Daniel's Ch. Prac.* 499, *note* 2. The Statute, in requiring a copy of the bill to be served upon the defendant, unquestionably looked to the benefit of the defendant. It intended to put him early and fully into possession of the plaintiff's case, that he might be at once in a situation to make his defence. Conceding this, yet when that is done, the plaintiff is entitled to some reciprocal benefit therefrom. The least that

may be claimed for him, would seem to be the advantage of considering the defendant as served, for the purposes of his appearance and answer; when particularly in addition to the copy bill, he has also been virtually served with a subpœna. The Court of Chancery must look to substance rather than form. There is no solid reason in the objection to this service, so far as we hold it good. To all reasonable intents and ends, the law has been complied with. It is contended that this service is wholly insufficient for any purpose. To test that position, suppose the defendant had appeared and a decree were had against him, could it be set aside upon petition? It ought to be, if the defendant's position be a sound one. But I am sure it could not be. If this service be wholly insufficient, then all subsequent proceedings would be irregular. An appearance would not cure the defect. The case of the *Executors of Brasher vs. Van Cortlandt* involves principles applicable to this case. The facts are analagous, in part, to the facts in this case. A bill was filed against certain persons as *a committee of a lunatic*, and the prayer for a subpœna was against them *as such.* The subpœna was issued against them individually, the Clerk omitting to describe them as *a committee of the lunatic.* The solicitors of the defendants were furnished with a copy of the bill, and the subpœna was served. The defendants appeared, and a decree was had. Afterwards, they filed a petition to set it aside, alleging that the real defendants in the bill, to-wit, the *committee of the lunatic,* had never been served, and that all the proceedings were irregular. Chancellor Kent turned them away. He laid stress upon the fact that they had been furnished with a copy of the bill, and considered the process and appearance as applicable to the bill. What would have been his order in the case, had the exception been taken upon the return of the subpœna, does not appear. He might have ordered an amendment and a service *de novo;* he might have ordered them to answer, or he might have discharged them. He, however, held the service and appearance sufficient to justify the decree against them. He says—"I apprehend the defendants are too late with this objection, whatever consideration might be due to it, if it had been made on the return of the subpœna and the entry of appearance. There was no bill filed by the complainants but the one in the suit against the defendants, as committee, in which the existence and history of the debt against the lunatic, and their

neglect or refusal to pay it after admission of its being due, is particularly set forth. A copy of this bill was taken by the solicitors for the defendants before their appearance. If the subpœna was not properly filled up according to the prayer in the bill, they and were not properly entitled by their addition, why was not the objection made in season? *They were informed of the contents of the bill. I shall consider the process and appearance as sufficiently applicable to that bill,* and the defendants shall not now be permitted to deny it. It is not to be tolerated by this Court, which is governed by substance and not by forms, that a party, after taking a copy of the bill on which the subpœna had issued, and in which he was properly entitled, and entering his appearance without his addition as committee, shall lie by silently and suffer the plaintiff to go on unsuspectingly, step by step, down to a final decree, on the ground of a valid appearance, and then start up with the objection that he had never appeared in the suit." 2 *John. Ch. R.* 247, 8.

The serving the defendants' solicitors with a copy of the bill, was not necessary by law in New York, as it is here. I cannot but think that Chancellor Kent, with our Statute before him, would have held the service in this case sufficient upon return of the subpœna. The point settled in the last case, for which I refer to it here, is, that the service of a copy of the bill in which the defendant, to-wit, the committee of the lunatic, is named and described, and the service of a subpœna with it in which the defendant, to-wit, the committee of the lunatic, is not named, *identifies the process with the bill.* Chancellor Kent so held.

[4.] So here, the service of a copy of the bill in which Mr. Hillhouse is named and described as a defendant, with a subpœna referring to that bill, in all its descriptive parts, yet not containing the name of Mr. Hillhouse, *identifies the subpœna with that bill.* This being settled, and looking to the provision of our own statute relative to a service of the copy, we think the service was sufficient to require the defendant to appear and answer, and that he ought not to have been discharged. With a view to the symmetry of the record, we direct the subpœna to be amended by inserting in the caption, the name of Mr. Hillhouse as one of the defendants.

Let the judgment be reversed.