### LEWIS *v.* GOLLNER *et al.*

*(City Court of Brooklyn, General Term.  April 27, 1891.)*

INJUNCTION—BUILDING RESTRICTIONS—VIOLATION BY THIRD PERSON.

G., having a contract for the purchase of land on which to erect flats in the rear of houses owned by plaintiff and others, in consideration of a large advance on his contract price transferred the contract to them, and agreed with plaintiff that he would not erect any flats in the immediate neighborhood.  Soon afterwards he purchased other land in the vicinity, which, after commencing the erection of flats thereon, he transferred for a valuable consideration to his wife, who took with full notice of G.'s agreement with plaintiff, but continued the erection of the buildings.

*Held,* that plaintiff was not entitled to an injunction to prevent their erection, as the agreement of G. was a mere personal agreement, not relating to any specific land, and therefore did not impose a covenant or equity which could be enforced against a subsequent grantee from him, even with notice of the agreement.

Appeal from trial term.

Action by Lester A. Lewis against Ervin G. Gollner and Ada F. M. Gollner. Plaintiff appeals from a judgment for defendants, entered on trial by the court without a jury.

Argued before CLEMENT, C. J., and VAN WYCK, J.

*Rufus T. Griggs,* for appellant.     *Taber & Case,* for respondents.

CLEMENT, C. J. The learned judge at special term found all the facts in this case in favor of the plaintiff, but held that such facts did not justify a judgment in his favor. The plaintiff owns and resides in a house on the northerly side of President street in this city, between Seventh and Eighth avenues. The defendant Ervin G. Gollner, on February 19, 1890, contracted in writing to purchase a plot of ground on the southerly side of Union street, 100 feet front and rear, and 90 feet in depth on each side, which plot is directly in the rear of the property of plaintiff, and on which Mr. Gollner intended to erect flats. The plaintiff and three adjoining owners of residences on President street, in order to prevent the construction of flats, purchased from Gollner his contract, and paid him therefor an advance of $6,300, though the property was worth only the contract price of $18,000. Gollner agreed in writing to transfer the contract on March 12th, and on March 25th the matter was closed up. The plaintiff claims, and the finding on conflicting testimony is in his favor, that prior to and on March 12th Gollner, in consideration of the payment of the $6,300 and of the execution of the agreement to buy him out, agreed with plaintiff orally that he would not construct or erect any flats in plaintiff's immediate neighborhood, or trouble him any more. About March 23d Gollner began to negotiate for the purchase of a plot of land on the northerly side of Union street, and diagonally across the street from the plot he had sold, and on April 1st purchased the same, and subsequently commenced the erection of five flats on said premises. On June 28th he transferred the property for a valuable consideration to his wife, who has continued the erection of the buildings. Mrs. Gollner took with full notice of the claim of plaintiff. The plaintiff brought this action to obtain an injunction to prevent the erection of the flats. On the facts, as found below, a strong case is made out against the defendant Gollner. He bought property for $18,000, which was its full value, and threatened to erect flats thereon, whereupon the neighbors, who owned fine residences, and who thought their homes would be injured, paid him $6,300 simply to control the property. As soon as he has closed his bargain he buys a plot of the same size for $20,000 on the side of the street opposite to the lots which he had sold, and commences to build flats. He negotiates with the immediate neighbors of the new purchase, asking a large advance on his purchase price, but is unable to agree with them, and continues the erection of the buildings. If there was any authority which was directly or indirectly in point in favor of the plaintiff, we would have no hesitation, on the facts, in rendering a decision in his favor and against the defendant. We have examined all the authorities cited, but it will suffice to refer to two only. In *Tulk* v. *Moxhay,* 11 Beav. 571, 2 Phil. Ch. 774, A., being seised of houses and a garden on Leicester square, conveyed the garden to B., and B. covenanted for himself and assigns not to build in the garden. Held, that purchaser from B. with notice of the covenant was bound by it in equity, although the covenant did not run with the land. This is the leading case in England, and has been repeatedly followed in that country. The second authority to which we shall refer is *Hodge* v. *Sloan,* 107 N. Y. 244, 17 N. E. Rep. 335. In that case the facts were briefly as follows:

N. was the owner of lands containing building sand, and the sale of the sand was his business. S. purchased a portion of the land, and covenanted in the deed not to sell sand from the parcel. S. subsequently conveyed to C., by warranty deed, and without covenants on the part of C., who, however, had notice of the covenant in the deed of N. to S. Held, that an action could be maintained by N. against C. to restrain the sale of sand by him. In each of the above cases the agreement related to a specific piece of land, and was to be found in a deed which would appear in the chain of title. The agreement was a covenant as to the use of the land which was made on the sale, and was restrictive. The parties purchasing took with notice of the agreement, and an action would lie against them for a specific performance on the same principle that a party who purchases from one who had contracted to sell real property with notice of the contract can be compelled to carry out such contract, as in *Duffy* v. *Donovan*, 46 N. Y. 223. The question in equity is not whether the covenant runs with the land, but whether the party purchasing the land shall be allowed to use it in violation of the contract entered into by his grantor, and when the party purchased with full notice of the covenant. *Hodge* v. *Sloan, supra*. The agreement made by Gollner related to no specific piece of land, for he owned no land in the neighborhood when he made it. He agreed that he would not in the future buy any land in the neighborhood for the purpose of erecting flats thereon. This, in our opinion, was a personal agreement between the plaintiff and Gollner, and did not impose any covenant or equity upon any lands which he should buy which could be enforced against any subsequent grantee from him, even though the party who purchased had notice of the agreement. Courts should not spell out a restrictive covenant as to real property unless the agreement is clear, and for a defined purpose. It may be said that the distinction that Gollner did not own the lots on the north side of Union street when he made the agreement is finely drawn. The answer is that if he had owned the lots when he made the agreement it might be well claimed that he contracted as to the particular lots which he owned. His agreement was as to his future acts, and not to the restrictive use of land which he should purchase. Judgment should be affirmed, with costs to the respondent Ada F. M. Gollner.