ALICE CROCKER, Plaintiff, *v.* LESTER A. LEWIS, Respondent. JAMES H. WATSON and Another, Appellants.

*Doctrine of* lis pendens — *a judgment for costs is subsequent in lien to that of a mortgage given after the filing of the* lis pendens — *lien of a judgment in equity.*

The doctrine applicable to a notice of *lis pendens* is based upon the theory of public policy that, while a suit is pending, there should be no change in the existing state of things. Its purpose is to give effect to the right ultimately established by the judgment and its office is to carry into effect the rule that pending the suit nothing shall be changed.

After the filing of a notice of *lis pendens* against real property, it is out of the power of the owner thereof to deprive the person filing the same of any right in such property, by any alienation of the property involved by mortgage or otherwise, and any person to whom such property is mortgaged subsequent to the filing of such *lis pendens* is bound by all proceedings in the action wherein the *lis pendens* was filed, subsequent to the filing thereof, to the same extent as if he had been made a party to the action.

A notice of *lis pendens* was filed in an action commenced against the owner of certain real estate to obtain an adjudication that such premises were subject to certain restrictive easements ; subsequently, and during the pendency of such action, the owner of such premises mortgaged the same. The plaintiff was finally successful in the action, and a judgment in his favor, and for costs, was docketed after the recording of such mortgage.

*Held,* that whatever the judgment in such action determined *in rem* touching such property was *res adjudicata* against such mortgagee; but that such mortgage was a lien on such real estate prior to the judgment for costs recovered in such action.

A court of equity will so control the legal lien of a judgment creditor as to protect the rights of those who have prior equitable interests in or liens upon such property or the proceeds thereof, and the lien of a judgment does not in equity attach upon the mere legal title to land existing in a defendant when the equitable title is in a third person.

APPEAL by the defendants, James H. Watson and another, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 7th day of May, 1894, denying the defendants' motion to confirm the report of a referee appointed. in surplus money proceedings.

*Josiah T. Marean,* for the appellants.

*W. C. Beecher,* for Lester A. Lewis, respondent.

DYKMAN, J.:

This was a proceeding to determine disputed claims to the surplus money arising from the sale under a judgment in an action to foreclose a mortgage.

The controlling facts are these : On the 30th day of April, 1890, the defendant Gollner executed a mortgage to the plaintiff covering certain property situated on Union street in the city of Brooklyn.

At this time Gollner had made a restricted agreement with the defendant Lester A. Lewis, whereby he had promised, for the consideration of $6,000, not to build flats or apartment houses in that neighborhood, but after he had obtained the title to the property in question he commenced the construction of flats thereon in violation of that agreement. Lewis began an action in the City Court of Brooklyn to restrain Gollner from the violation of his agreement, and to enforce his restrictive easement upon the property. The plaintiff's mortgage was recorded on the 1st day of May, 1890, and he filed his *lis pendens* in that action against the property on the 5th day of May, 1890. Mortgages for $9,000 to the defendants Watson and Pit-

tinger were made by Gollner and his wife upon the same property several months after the commencement of the action by Mr. Lewis, and the filing of his *lis pendens* therein, one of them being dated March 2, 1891, and recorded March 3, 1891, and the other being dated April 4, 1891, and recorded April 6, 1891. There is due on these mortgages the sum of $7,442.52, with interest.

Gollner having made default in his payment upon the mortgage to the plaintiff, she brought this action to foreclose the same, making Lewis and Watson and Pittinger parties defendant. No answer having been put in, judgment of foreclosure and sale was entered October 20, 1891, and a sale of the premises was had thereunder.

At this time Lewis had upon the record no rights in this property, the City Court having dismissed his complaint, and his appeal was then pending in the Court of Appeals.

The sale occurred on the 21st day of November, 1891. On the 1st day of December, 1891, the Court of Appeals handed down a decision in the case of Lewis against Gollner, reversing the judgment of the court below and granting a new trial, costs to abide the event, and holding that Lewis had a restrictive easement in this property by virtue of his agreement and was entitled to his injunction.

Upon the announcement of this decision the purchaser at the sheriff's sale under the judgment in foreclosure refused to complete his purchase, and a motion was made to compel him to do so. On this motion Lewis, Watson and Pittinger were represented, and the motion was denied. Thereafter Lewis retried his action in the City Court, and obtained a judgment, which was entered and docketed on the 11th day of May, 1892, perpetually restraining Gollner from erecting flats on the property or using the building thereon as flats and awarding Lewis judgment against Gollner for $490.26 costs.

Gollner appealed to the General Term and his appeal was dismissed with twenty-three dollars and seven cents costs. Thereafter Lewis moved in this action to open the default as against him, and to be allowed to come in and answer, setting up his equitable rights against the property. His default was opened and he served his answer.

The case came on for trial at the Special Term and resulted in a supplemental judgment, which was entered herein on the 29th day

of June, 1893, directing, among other things, that the decree entered herein in October, 1891, be amended so as to direct that a sale of the premises herein be made subject to the rights and equities of the defendant Lester A. Lewis, and it was thereby decreed that such sale should be subject to the rights, equities and easements of the defendant Lester A. Lewis in and to said property particularly described in said judgment, as the same have been adjudged and decreed by the judgment of the City Court of Brooklyn in an action wherein Lester A. Lewis was plaintiff and Ervin G. Gollner and Ada M. F. Gollner were defendants, and that was entered and filed in the clerk's office of said county on the 11th day of May, 1892.

A resale was had of the property under the original judgment as amended and the supplemental judgment, and the property bid in for sufficient to pay off the mortgage herein and leave a surplus of $691.20. Claims were made against this surplus by Lewis as a judgment creditor under the decree, and by Watson and Pittinger as mortgagees under their mortgages. The amount due to Watson and Pittinger upon their mortgages is a lien upon the surplus prior to any other lien, unless it be that of the Lewis judgments in the City Court against Gollner for the costs of that action in that court, and that judgment for costs was docketed subsequent to the making and recording of the Watson and Pittinger mortgages.

The appeal requires the determination of the effect of a notice of pendency of action, there being no question about the sufficiency and propriety of the notice or the filing thereof.

The question involved is under the control of section 1671 of the Code of Civil Procedure, which is this: "Where a notice of the pendency of an action may be filed, as prescribed in the last section, the pendency of the action is constructive notice, from the time of so filing the notice only, to a purchaser or incumbrancer of the property affected thereby, from or against a defendant with respect to whom the notice is directed to be indexed, as prescribed in the next section. A person whose conveyance or incumbrance is subsequently executed, or subsequently recorded, is bound by all proceedings taken in the action, after the filing of the notice, to the same extent as if he was a party to the action."

The language is plain, but it is not easily applied to this case.

The theory of the doctrine of *lis pendens* is the public policy that, while a suit is pending, there is to be no change in the existing state of things. It is simply a rule to give effect to the right ultimately established by the judgment. Its office is to carry into effect the familiar legal maxim *pendente lite nihil innovetur*, pending the suit nothing shall be changed. It was, therefore, out of the power of the defendant Gollner, after the filing of the notice of *lis pendens*, to defeat Lewis by any alienation of the property involved by mortgage or otherwise, and Watson and Pittinger were bound by all the proceedings in the action of Lewis subsequent to the filing of the notice of *lis pendens* to the same extent as if they had been parties to that action. So much is clear. But how far does that rule reach? It means certainly that Gollner's title, which these two mortgages covered, was limited by the rights, equities and easements of Lewis. But does it also mean that the lien of the judgment for costs took effect as of the time of filing his notice, and so became prior to the lien of the two mortgages? A judgment becomes a lien by virtue of the statute, and not by virtue of the notice of *lis pendens*. It would seem to be inequitable to hold that the simple provision for the recovery of costs gives the judgment therefor a retroactive effect and subordinates the lien of the mortgages thereto. The object and requirement of the statute in relation to the effect of a notice of *lis pendens* would seem to be met and answered by holding the mortgage to be subsequent to the provision of the judgment for a restrictive easement in the property. Whatever the judgment determines *in rem* touching the property is *res adjudicata* against Watson and Pittinger as subsequent incumbrancers, but we discover no reason for holding that the judgment is to attach as a lien before it was actually docketed.

The respondents rely upon the case of *Hull* v. *Spratt* (1 Hun, 298), but that case was entirely dissimilar to this. The facts in that case were these: On the 2d day of September, 1870, the defendant Spratt agreed to sell certain premises to the defendant Stephenson, who was unable to perform the contract. In April, 1871, Stephenson commenced an action to compel the specific performance of the contract and filed a notice of *lis pendens* therein on the 29th day of April, 1871. On the 10th day of June, 1872, judgment was entered in favor of Stephenson, by which it was

adjudged that he should recover of Spratt $1,350, for the money he had been paid by Stephenson upon his contract as a specific lien on the surplus money arising from a sale of the premises under a judgment for the foreclosure of a prior mortgage.

On the 18th day of May, 1871, the defendant Bowne recovered a judgment against Spratt for $4,452.58, which was duly docketed, the premises having been sold under a mortgage which was prior to both of those judgments. It was referred to a referee to report as to the proper distribution of the surplus moneys arising from the sale. The referee reported in favor of Stephenson, and this report being confirmed, the defendant Bowne appealed to the General Term. The following is the first paragraph of the opinion of the General Term : " The respondent's judgment directed to be paid as a prior lien to the judgment recovered by the appellant out of the surplus moneys arising from the foreclosure sale, was recovered as a specific lien upon the fund. The action was brought to enforce the specific performance of a contract for the conveyance of the property, and a notice of *lis pendens* was properly filed in it before the appellant recovered his judgment, and as the property was sold under the foreclosure of a mortgage, superior to the rights of either of these parties, the respondent recovered a judgment for the money he had paid upon his contract as a specific lien on the vendor's interest in the fund. This was equitable and just, because by the contract the vendor became in effect the trustee of the title for the vendee. The property was equitably his, so far as the purchase price was paid, and to that extent a judgment recovered against the vendor did not become a lien upon it."

It was also said that the judgment of Bowne was subordinate to the action of Stephenson by reason of the filing of the notice of *lis pendens*, and that by the judgment in his favor so much of the fund as was necessary for that purpose was appropriated to this payment. So the judgment of Bowne, which was obtained about one year before that of Stephenson, was subordinated to the judgment of the latter, not by reason of the operation of the notice of *lis pendens*, but because by the terms of the judgment it was declared a specific lien upon the surplus money upon the equitable ground that Spratt, the vendor, became, by virtue of the contract, the trustee of the title for his vendee, Stephenson.

SECOND DEPARTMENT, JUNE TERM, 1894.      [Vol. 79.

The decision was made in obedience to the rule that a court of equity will so control the legal lien of the judgment creditor as to protect the rights of those who have prior equitable interests in or liens upon such property or the proceeds thereof. (*Wilkes* v. *Harper*, 2 Barb. Ch. 338.) The lien of a judgment does not in equity attach upon the mere legal title to land existing in the defendant when the equitable title is in a third person. (*Ells* v. *Tousley*, 1 Paige, 280.)

Such was not the provision in the judgment in favor of Lewis. Had he been awarded a specific lien upon the surplus money his judgment would be entitled to preference in payment out of that fund.

The court decided the *Spratt* case upon the peculiar provisions of the judgment, making it a specific lien upon the fund, and there was no intimation that the filing of a notice of *lis pendens* would have subordinated the lien of the Bowne judgment to that of Stephenson. There was no valid reason why it should. The *lis pendens* had performed its office; it had rendered the judgment effective against both Bowne and Stephenson. So it had here. Watson and Pittinger were bound by the judgment entered in the Lewis suit. Their rights under their mortgages are limited by the provisions in that judgment which restrained Gollner from the erection of flats upon the premises. We think the *lis pendens* can have no further or greater effect, and that the judgment for costs does not take precedence to the lien of the two mortgages of Watson and Spratt. Prior specific equitable liens are always entitled to a preference over a subsequent legal lien by judgment. (*Matter of Howe*, 1 Paige, 125; *Dwight* v. *Newell*, 3 N. Y. 187.)

And the allowance of the judgment to Lewis for costs, which is the general lien in preference to the specific equitable lien, would be at variance with that principle.

We shall yield all the effect the statute requires for a notice of *lis pendens* if we hold the mortgagees are bound by all the proceedings in the Lewis suit to the same effect as if they were parties thereto. That is, their mortgages are subject to the conditions contained in the final judgment in that action. Their mortgages are specific, equitable liens. His judgment is a general legal lien.

Our conclusion, therefore, is that the order should be reversed,

with ten dollars costs and disbursements, to be paid from the fund, and the motion to confirm the report of the referee granted, with twenty dollars costs, besides disbursements, to be paid from the fund also.

BROWN, P. J., and CULLEN, J., concurred.

So ordered.